**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. AMY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | CIV-25-0142-G |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | ATTORNEY LIEN CLAIMED |
| 1. STATE OF OKLAHOMA, *ex rel*, BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA, d/b/a Oklahoma Health Sciences Center, | ) ) ) ) ) | |
| And | ) ) | |
| 2. Vesper Grantham, individually, | ) ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Amy Davis, and hereby pleads as follows:

## PARTIES

1. The Plaintiff is Amy Davis, an adult resident of Oklahoma County, Oklahoma.

2. The Defendants are:

   A. The State of Oklahoma, *ex rel*, Board of Regents of the University of Oklahoma d/b/a University of Oklahoma Health Sciences Center ("OUHSC"); and

   B. Vesper Grantham, an adult resident of Oklahoma County, Oklahoma.

## JURISDICTION & VENUE

3. The Plaintiff asserts the following claims:

   A. Claims against Defendant OUHSC for disability discrimination, including

1

        termination on the basis of disability (as defined by the Americans with Disabilities Act), failure to accommodate, creation of a discriminatory and/or retaliatory hostile working environment, and termination in retaliation for requesting accommodations, in violation of the federal Rehabilitation Act, the Americans with Disabilities Act and Oklahoma's Anti-Discrimination Act; and

    B.    Claims against both Defendants for violation of Plaintiff's rights under the Family and Medical Leave Act ("FMLA") including termination in retaliation for Plaintiff's exercise and/or attempted exercise of her FMLA rights.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. Most of the conduct giving rise to Plaintiff's claims occurred in Oklahoma County, Oklahoma, a county within the United States District Court for the Western District of Oklahoma. Accordingly, venue is proper in this court.

## STATEMENT OF FACTS

5. The Defendant OUHSC is an entity that receives federal funds and is an employer as defined by the federal Rehabilitation Act and Oklahoma's Anti-Discrimination Act.

6. Defendant Vesper was Plaintiff's immediate supervisor and, to Plaintiff's knowledge, was involved in the decision to terminate the Plaintiff's employment.

7. Plaintiff was employed by Defendant OUHSC from around 2008 until around July 31, 2024.

8. Plaintiff held the job title of Clinical Assistant Professor in the Medical Imaging and Radiation Sciences Department.

9. Plaintiff was qualified for her job position and performed satisfactorily.

10. Plaintiff suffers from impairments to her autoimmune system including Lupus, Rheumatoid Arthritis, Sjogren's syndrome and related conditions, along with impairments to her connective tissue which, without the ameliorative effects of mitigating measures would substantially limit major life activities (including major bodily functions) including, but not limited to, Plaintiff's autoimmune system, musculoskeletal system, endocrine system, ability to walk, communicate and work.

11. Around September 2023 Plaintiff told her supervisor, Defendant Vesper Grantham (Department Chair) about her medical conditions. Plaintiff told Defendant Vesper that she intended to seek intermittent medical leave.

12. At that time Plaintiff had worked for Defendant OUHSC for at least one year and had worked at least 1,250 hours in the prior twelve months such that she was entitled to leave protected by the FMLA.

13. Plaintiff had additional conversations with Defendant Vesper about taking medical leave. During many conversations, Defendant Vesper told Plaintiff that she (Vesper) did not know anything about FMLA leave and that Plaintiff would only be able to take paid time off (PTO) leave.

14. Plaintiff began taking intermitting time off work around October 3, 2023.

15. Soon thereafter Plaintiff began requesting other medical accommodations including assistance with her workload and job duties.

16. In response to Plaintiff's requests, which continued up until Plaintiff's termination, Defendant Grantham would act irritated, accuse Plaintiff of asking for "special

treatment" and "special things". For instance, Defendant Grantham denied one of Plaintiff's requested accommodations by saying she "can't have the faculty think [Defendant Grantham is] giving [Plaintiff] special treatment".

17. Defendant Grantham made fun of Plaintiff's medical condition, joking that Plaintiff needed to "get a handicapped sticker" and to not "act loopy" because of her medical issues.

18. Around the end of October 2023 Defendant Grantham significantly increased Plaintiff's workload which required her to work about twenty more hours per week.

19. When Plaintiff explained that her medical conditions make it difficult to handle the additional workload, and that she needed accommodation to help with her workload, Defendant Grantham refused to accommodate, telling Plaintiff "Amy, we take care of our own classes in this department".

20. Plaintiff's medical condition continued to worsen in the next few months, at least partly due to the strain caused by being forced to work without a needed medical accommodation. Plaintiff continued to ask for accommodation through the next few months. Defendant Grantham continued to deny Plaintiff's requests, continued to refuse any accommodation, and began accusing Plaintiff of seeking medical accommodations because (according to Defendant Grantham) Plaintiff had developed a "poor work ethic" and "poor character".

21. Around February 2024 Defendant Grantham began pressuring Plaintiff to take a long-term medical leave of absence if Plaintiff was unable to work without accommodation.

22. Plaintiff explained that she did not want to take medical leave, that she wanted to continue working, and that she could if the Defendants would provide a reasonable accommodation for her medical conditions.

23. Around March 15, 2024 Defendant Grantham issued Plaintiff a written reprimand, titled "Positive Discipline Documentation" accusing Plaintiff of various types of misconduct including conduct caused by Plaintiff's medical conditions and resulting from Defendant's refusal to provide reasonable accommodation.

24. Defendant Grantham acknowledged that at least some of the conduct for which she was disciplining Plaintiff may have been caused by Plaintiff's medical conditions and need for accommodation. As part of the reprimand, Defendant Grantham stated that she is "willing to discuss appropriate job modifications for [Plaintiff] to be successful in her position. Depending on the requests, [Plaintiff] may need to reach out to ADA as previously discussed".

25. Although Defendant Granthan stated she was "willing to discuss" potential accommodations, she refused to discuss any type of job modification or other accommodation other than medical leave, which she continued to pressure Plaintiff to take.

26. Defendant Grantham continued to pressure Plaintiff to take a long-term medical leave of absence. For instance, Plaintiff was taking intermittent medical leave prior to being given the written reprimand. However, her attendance – including medical-related attendance issues – were included as part of the written reprimand. Defendant Grantham also stated in the written reprimand that if Plaintiff's "attendance, communication, and conduct are not improved . . . a second written [reprimand] will be given."

27. Around May 28, 2024 Defendant gave Plaintiff a letter terminating her employment at the end of July 2024.

28. Plaintiff was terminated as of the effective date of termination as stated in the letter.

29. As a direct result of Plaintiff's termination the Plaintiff has suffered, and continues to suffer, wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm including worry, frustration, sadness and similar unpleasant emotions.

30. At the least, significant factors and/or but-for reasons for the Defendants' conduct include Plaintiff's disability and/or requests for accommodation. These may also be but-for causes of Defendant's conduct.

31. Plaintiff has exhausted her administrative remedies by timely filing an EEOC charge of discrimination on October 17, 2024. The EEOC issued Plaintiff's right to sue letter with a date on the letter of December 4, 2024 and Plaintiff received such letter thereafter. This complaint is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

32. Plaintiff also filed a Government Tort Claim Notice on October 7, 2024, pursuant to the Oklahoma Government Tort Claims Act. It has been more than ninety (90) days since filing the notice. The Plaintiff's tort claim was denied on January 22, 2025.

## COUNT I

Plaintiff incorporates the above paragraphs and further alleges:

33. This Count goes to Defendant OUHSC only.

34. Discrimination on the basis of disability, including creation of a hostile working environment, failure to accommodate, and retaliation in the form of creation of a

hostile working environment and retaliatory termination, violates the federal Rehabilitation Act.

35. Under this Count the Plaintiff is entitled to her wage loss (including back, present and front pay).

36. Plaintiff is also entitled to equitable relief such as reinstatement and an injunction prohibiting Defendant from refusing to accommodate, discriminate and retaliate against Plaintiff along with reinstatement and an order requiring Defendant to provide reasonable accommodation to Plaintiff.

## COUNT II

Plaintiff incorporates the above paragraphs and further alleges:

37. This Count goes to Defendant OUHSC only.

38. Discrimination on the basis of disability, including creation of a hostile working environment, failure to accommodate, and retaliation in the form of creation of a hostile working environment and retaliatory termination, violates the Americans with Disabilities Act.

39. Plaintiff is entitled to, and under this Count seeks only, prospective equitable relief such as reinstatement and an injunction prohibiting Defendant from refusing to accommodate, discriminate and retaliate against Plaintiff along with reinstatement and an order requiring Defendant to provide reasonable accommodation to Plaintiff.

## COUNT III

Plaintiff incorporates the above paragraphs and further alleges:

40. This Count goes to Defendant OUHSC only.

41. Discrimination on the basis of disability, including creation of a hostile working environment, failure to accommodate, and retaliation in the form of creation of a

hostile working environment and retaliatory termination, violates the Oklahoma Anti-Discrimination Act.

42. Under this Count the Plaintiff is entitled to her wage and benefit loss along with an equal amount in liquidated damages.

43. Plaintiff is also entitled to declaratory and injunctive relief including reinstatement and an order requiring Defendant to cease its creation of a hostile working environment and to provide reasonable accommodation to the Plaintiff.

## COUNT IV

Plaintiff incorporates the above paragraphs and further alleges:

44. This Count goes to Defendant OUHSC only.

45. Interference with Plaintiff's FMLA rights and retaliation after she exercised and/or attempted to exercise such rights, violates the FMLA.

46. Plaintiff is entitled to, and under this Count seeks only prospective equitable relief such as reinstatement and an injunction prohibiting Defendant from refusing to accommodate, discriminate and retaliate against Plaintiff along with reinstatement and an order requiring Defendant to provide reasonable accommodation to Plaintiff.

## COUNT V

Plaintiff incorporates the above paragraphs and further alleges:

47. This Count goes to Defendant Grantham, individually.

48. Interference with Plaintiff's FMLA rights and retaliation after she exercised and/or attempted to exercise such rights, violates the FMLA.

49. Under this Count the Plaintiff is entitled to her wage loss (including back, present and front pay and the value of benefits associated with such wages) and an equal amount in liquidated damages.

50. Plaintiff is also entitled to declaratory and injunctive relief including reinstatement and an order requiring Defendant to cease its creation of a hostile working environment and to provide reasonable accommodation to the Plaintiff.

**WHEREFORE,** the Plaintiff requests this Court award all relief, including equitable and monetary relief, available under the law, including but not limited to, a declaration that Defendant violated federal and/or state law, wage and benefit loss, compensatory damages (including emotional distress damages), liquidated damages, attorneys' fees and costs, reinstatement, along with all other relief allowed.

**RESPECTFULLY SUBMITTED THIS 31st DAY OF JANUARY 2025.**

s/ Amber L. Hurst
Amber L. Hurst, OBA No. 21231
HAMMONS, HURST & ASSOC.
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: amber@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
